Louis L. HERM et al., Plaintiffs,

v.

Daniel W. STAFFORD et al., Defendants.

No. 6651–B.

United States District Court, W. D. Kentucky.

Aug. 23, 1978.

Spencer E. Harper, Jr., William W. Davis, Louisville, Ky., J. Vernon Patrick, Jr., Birmingham, Ala., for plaintiffs.

Edward A. Marye, Jr., Clay, Marye & Cowden, Mount Sterling, Ky., for defendants, Albert B. Chandler, Jr., R. Haywood Alves, and the Estate of Whitney Dunlap.

## MEMORANDUM

BALLANTINE, District Judge.

Defendants, Albert B. Chandler, Jr. (Chandler, Jr.), R. Haywood Alves (Alves), and the Estate of Whitney Dunlap (Dunlap), deceased, have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions are based upon their assertion that at no time did any of them serve as directors, officers, employees, agents, suppliers or in any other capacity with Daniel Boone Fried Chicken (DBFC). Defendants do admit, however, that as directors of Commonwealth Security Investors (CSI) they voted in favor of the merger of CSI and DBFC on May 19, 1969.

These defendants were made parties in a second amended complaint filed October 20, 1972. The complaint alleged that as directors of CSI, each of them voted for a reorganization between CSI and DBFC, whereby CSI transferred to DBFC all assets and liabilities in exchange for DBFC common stock. A special meeting of CSI shareholders had been called, and each shareholder's notice included an "Explanation" regarding the proposed reorganization. The deficiencies in the proxy solicitation materials and the "Explanation" gave rise to the claims against these three defendants.

## STATUTE OF LIMITATIONS

■ The provisions of the Investment Company Act of 1940 [1], the Securities Act of 1933 [2], and the Securities Exchange Act of 1934 [3] do not include a statute of limitations applicable to civil actions for their violation. Further, no general federal statute of limitations applies to civil actions for the violation of federal statutes. Where Congress creates a federal right but does not prescribe a period for its enforcement, this Court must "borrow" the statute of limitations applicable under the law of the forum state. *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Klein v. Bower,* 421 F.2d 338 (2d Cir. 1970); *Korn v. Merrill,* 403 F.Supp. 377 (S.D.N.Y.1975), aff'd 538 F.2d 310 (2d Cir. 1976). The "borrowing" principle is applicable to actions under the federal securities laws. See, e. g., *Janigan v. Taylor,* 344 F.2d 781 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); *Klein v. Shields & Co.,* 470 F.2d 1344 (2d Cir. 1971).

■ The Court must therefore determine which Kentucky statute of limitations effectuates the federal policies underlying the acts. *UAW v. Hoosier Cardinal Corp.,* supra; *Gaudin v. KDI Corp.,* 576 F.2d 708 (6th Cir. 1978); *Charney v. Thomas,* 372 F.2d 97 (6th Cir. 1967). Kentucky has two statutes for consideration. The Kentucky "Blue Sky Law," KRS 292.480(3), contains a three year limitation period (as amended June 16, 1972). KRS 413.120 is a five year statute of limitations applicable to general fraud. The Court stands by its recent decisions that the blue sky limitation period is the most appropriate statute to apply. See *Herm v. Stafford,* 455 F.Supp. 650 (W.D. Ky.1978). See also *Price and Bryan v. Bache & Co., Inc., Stein Brothers and Boyce,* No. C 76–0029–L(B) (W.D.Ky., January 25, 1978).

■ Federal law applies to determine the date on which the statute of limitations begins to run. *Holmberg v. Armbrecht,* supra. The statute will begin to run on the date of the discovery of the fraud or on the date the fraud should upon reasonable inquiry have been discovered. *Korn v. Merrill,* supra at 387.

---

1. 15 U.S.C. Section 80a–1 et seq.

2. 15 U.S.C. Section 77a et seq.

3. 15 U.S.C. Section 78a et seq.

## CLAIMS UNDER THE INVESTMENT COMPANY ACT OF 1940

Chandler, Jr., Alves, and Dunlap were each named in the complaint as "a Director and controlling person" of CSI, a management, closed-end, non-diversified registered investment company, pursuant to the Investment Company Act of 1940. The Act was allegedly violated by their failure to disclose the affiliation of defendants Albert B. Chandler, Sr., Leonard K. Nave, and J. Dan Chandler with DBFC in the proxy solicitation materials used in the merger.

Count VII of the second amended complaint refers specifically to defendant Chandler, Jr., Alves, and Dunlap, among others. A securities violation included therein was the "Explanation" statement that "the prospects for the Daniel Boone Fried Chicken Corporation are very good." According to the complaint, Daniel Boone was at that time insolvent, and had suffered a net operating loss of at least one half million dollars. Omissions in the proxy solicitation materials and the "Explanation" mailed to CSI shareholders included: (1) that Chandler, Sr., an affiliated person [4] of CSI, had accepted moneys from Daniel Boone, the proposed partner to the reorganization; (2) that the proxy solicitation materials and "Explanation" dated May 9, 1969, had not been submitted to the SEC before mailing; (3) that defendants Chandler, Sr., Nave, and J. Dan Chandler, while affiliated persons of CSI, participated in and effected transactions in connection with a joint enterprise or arrangement in which CSI was a joint and several participant, without filing an application (for exemption) under Rule 17d–1 with the SEC or without the granting of an exemption by the SEC. Plaintiffs contend that the omis-

sions were in violation of the Investment Company Act of 1940.

■ In *Richland v. Crandall*, 262 F.Supp. 538, 554 (S.D.N.Y.1967), the Court held that "corporations are not required to address their stockholders as if they were children in kindergarten." However, the Court is reminded of Judge Friendly's admonition in *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1297 (2d Cir. 1973), that "it is not sufficient that overtones might have been picked up by the sensitive antennae of investment analysts." See *Gould v. American Hawaiian Steamship Co.*, 535 F.2d 761, 774 (3d Cir. 1976). Somewhere between kindergarten age and that of a sophisticated investment analyst there lies an investor capable of inquiring into possible fraudulent schemes. Surely a reasonable investor would have wondered whether the May 9, 1969 proxy solicitation materials and "Explanation" had been previously submitted to the SEC or whether the transactions detailed in Count III of the second amended complaint had been carried out with SEC approval. The record reveals numerous facts sufficient as a matter of law to have put plaintiffs upon notice and inquiry, and to have commenced the running of the period of limitation no later then May 19, 1969. The former two year period must be applied as the irregularities were reasonably discoverable before the June 16, 1972, amendment. *Sparrow v. Zappa*, No. 7563–B (W.D. Ky.1973). Plaintiffs' claims under the Investment Company Act of 1940 are therefore barred under Kentucky's blue sky limitation period, KRS 292.480(3).

## CLAIMS UNDER THE SECURITIES ACTS OF 1933 AND 1934

Plaintiffs allege that Chandler, Jr., Alves, and Dunlap violated Section 17(a) of the

---

**4.** The Investment Company Act defines "affiliated person" as follows:

"(3) 'Affiliated person' of another person means (A) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting securities of such other person; (B) any person 5 percentum or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by such other person; (C) any person

directly or indirectly controlling, controlled by, or under common control with, such other person; (D) any officer, director, partner, copartner, or employee of such other person; (E) if such other person is an investment company, any investment adviser thereof or any member of an advisory board thereof; and (F) if such other person is an unincorporated investment company not having a board of directors, the depositor thereof." 15 U.S.C. Section 80a–2(a)(3).

Securities Act of 1933, 15 U.S.C. Section 77q[5] and SEC Rule 10b–5, 17 C.F.R. 240.-10b–5, promulgated by the SEC pursuant to Section 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. Section 78j(b).[6] Misleading statements, material omissions, and failure to have the proxy solicitation approved in advance by the SEC formed the basis of the Section 10(b) violations.

Count VII also charges breach of fiduciary duties by failing to make reasonable inquiry into the financial condition and affairs of DBFC. Such inquiry would have revealed that on May 19, 1969, DBFC was insolvent, unable to meet its financial obligations, and operating in violation of federal and Kentucky securities laws. Further, the defendants' conduct not only allegedly injured the shareholders of CSI, but also fostered the unregistered sale of DBFC securities and thereby maintained a false market in DBFC securities. The plaintiffs further claim that the misleading statements and announcements fraudulently induced investors to purchase DBFC securities after the merger, and lulled investors who had previously purchased DBFC securities.

In *Nash v. Farmers New World Life Insurance Company,* 570 F.2d 558, 562 (6th Cir. 1978), the Sixth Circuit Court of Appeals discussed Section 10(b) and fiduciary duty violations arising out of corporate mergers:

"A claim of fraud or breach of fiduciary duty in a merger states a claim for relief under Rule 10b–5 'only if the conduct

alleged can be fairly viewed as "manipulative or deceptive" ' within the meaning of § 10(b) of the Securities Exchange Act. *Santa Fe Ind., Inc., v. Green,* 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480. 'Manipulation' under the Act 'refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity'." Id. at 476, 97 S.Ct. at 1302.

No general federal statute of limitations applies to actions brought under Section 17 of the Securities Act or Section 10(b) of the Securities Exchange Act. The Court must therefore apply the most analogous state statute which best implements federal policy. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

The language of the Kentucky Blue Sky Law is nearly identical to the provisions of 15 U.S.C. Section 77q. The Kentucky civil remedies section also encompasses the heart of plaintiffs' action under their federal claim. Thus, the blue sky limitation period will be applied as "the most appropriate state statute applicable" to the claim. *City of Owensboro v. First U. S. Corp.,* 534 S.W.2d 789, 791 (Ky.1975). Likewise, the language of the regulation under Section 10(b) is virtually identical to that of KRS 292.320(1). Cf. 17 C.F.R. 240.10b–5. The blue sky limitation period will also be applied to the Section 10(b) claims. *Payne v. Fidelity Homes of America, Inc.,* 437 F.Supp. 656 (W.D.Ky.1977). See also

---

**5.** Section 17(a) reads as follows:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would

operate as a fraud or deceit upon the purchaser. 15 U.S.C. Section 77q(a).

**6.** Rule 10b–5 makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary . . . to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. 240.10b–5. A statement or omission is material if it reasonably could have been expected to influence the decision to sell. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Nelson v. Serwold,* 576 F.2d 1332 (9th Cir. 1978).

*Forrestal Village, Inc. v. Graham,* 179 U.S. App.D.C. 225, 551 F.2d 411 (1977); *Cole v. Alodex Corp.,* 533 F.2d 372 (8th Cir. 1976); *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402 (2d Cir. 1975); *Newman v. Prior,* 518 F.2d 97 (4th Cir. 1975); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir. 1974), cert. denied, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972); *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970).

As stated above, federal law requires that a limitations period begin to run when "the fraud is or should have been discovered." *Gaudin v. KDI,* supra, quoting *Vanderboom v. Sexton,* supra. Determination of the date on which the statute begins to run is likewise a matter of federal law. *Holmberg v. Armbrecht,* supra; *Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974).

The Court must apply the rule requiring the exercise of reasonable care to discover the alleged fraud. *Gaudin v. KDI Corp.,* supra at 713. Such a rule compels application of the former two year limitation period under KRS 292.480(3), as opposed to the amended three year period effective June 16, 1972. *Sparrow v. Zappa,* supra. The events which gave rise to plaintiffs' cause of action have been public knowledge since 1969 as a result of the May 9, 1969, proxy solicitation materials. See *Korn v. Merrill,* supra at 387. Not until October 20, 1972, were defendants Chandler, Jr., Alves and Dunlap made parties in the second amended complaint. Reasonable inquiry would have revealed the involvement of these defendants long before the filing of the second amended complaint.

The Court recently held that notice of fraud was governed in this case by numerous events, culminating on July 10, 1970. See *Herm v. Stafford,* 455 F.Supp. 650 (W.D.Ky.1978). The record conclusively establishes that the applicable statute of limitations, KRS 292.480(3), began to run on July 10, 1970, for Section 17(a) and 10(b) purposes.

The Court holds that the second amended complaint was not timely filed as to defendants Chandler, Jr., Alves, and Dunlap. Their motions for summary judgment will therefore be granted.