INTRODUCTION
ROGERS, Circuit Judge.
James D. Lyon, Trustee for Wright Enterprises, appeals from the judgment of the district court in this bankruptcy proceeding. The district court upheld the bankruptcy court’s conclusion that plaintiff’s action against Black Gold Sales, Inc. (“Black Gold”), was barred by the applicable statute of limitations. For the following reasons, we AFFIRM the judgment of the district court.
BACKGROUND
This case involves two contracts entered into by the officers of Wright Enterprises, a Kentucky general partnership and the debtor in this case, and Black Gold. Lyle Robey was the attorney and chief executive officer of Wright Enterprises at all times relevant to this dispute. J.T. Lundy was the managing general partner of Wright Enterprises as well as the manager of Calumet Farm until he was removed from these positions in March 1991. L.D. Gorman was the president of Black Gold.
On March 8, 1989, Robey, ostensibly with the consent of Lundy, entered into a contract with Gorman to sell 233,333 common shares of CCAIR, Inc., stock held by Wright Enterprises at three dollars per share to Black Gold. On March 13, 1989, Lundy entered into a “profit sharing agreement” with Black Gold whereby Lundy would receive one-half of the profits resulting from the resale of the CCAIR stock. The profit sharing agreement also provided that if the resale of the CCAIR stock resulted in a net loss to Black Gold, Lundy would make up that loss to Black Gold through the transfer of Calumet Farm stallion seasons to Black Gold.
The plaintiff alleges that prior to the formation of these contracts, Robey, Lundy, and Gorman knew that CCAIR stock was about to undergo an initial public offering (“IPO”) at $10 per share. This fact, according to the plaintiff, was concealed from the other partners of Wright Enterprises. On April 18, 1989, the CCAIR board of directors approved Merrill Lynch Capital Markets’s proposal to underwrite the IPO at $10 per share. According to the plaintiff, the series of contracts between Robey, Gorman, and Lundy resulted in a loss in excess of $1 million to Wright Enterprises. Under the terms of these agreements, Black Gold and Lundy would apparently realize significant gains, while Black Gold would be shielded from any potential loss. According to the plaintiff, this apparent fraud on the other partners of Wright was not discovered until after Lundy and Robey were both removed from their positions with Wright Enterprises in the spring of 1991. Specifically, Wright’s other officers testified in their *719 depositions that they did not gain access to the files of Wright Enterprises until sometime after May of 1991.
On June 6, 1995, an involuntary petition of bankruptcy was filed against Wright Enterprises. Wright Enterprises withdrew its objections to the involuntary petition of bankruptcy on May 1, 1996, and an Order for Relief was entered. The Chapter 7 Trustee for Wright Enterprises initiated this adversary proceeding against Black Gold on April 30, 1998, and, in his initial complaint, the Trustee alleged that Black Gold committed fraud against Wright Enterprises by entering into the contract and profit sharing agreement with Robey and Lundy. On June 1,1998, Black Gold filed a motion to dismiss, arguing that plaintiffs complaint must be dismissed because the plaintiff was alleging fraud in connection with the sale of securities, and the applicable statute of limitations for such an action is three years. Plaintiff then filed an amended complaint on June 29, 1998, alleging that Black Gold aided and abetted Robey and Lundy in a breach of their fiduciary duties. The bankruptcy court dismissed the action on October 3, 2000, ruling that under Carothers v. Rice, 633 F.2d 7 (6th Cir.1980) a defrauded seller of a security has an implied cause of action under K.R.S. § 292.320(1) (the Kentucky blue sky statute), and therefore the three-year statute of limitations in K.R.S. § 292.480(3) applies.
The plaintiff then appealed to the district court, and on August 31, 2001, the district court entered an order remanding the case to the bankruptcy court for further consideration of whether the action was barred by the applicable statute of limitations, given the recent amendments to the Kentucky blue sky statute, which extended the discovery rule to securities fraud cases. The district court determined that because the Kentucky legislature made its discovery rule amendment retroactive, the factual record was insufficient to determine the date of discovery of the alleged fraud. In remanding the case, the district court reserved judgment on whether the claim was aiding and abetting a breach of fiduciary duty or fraud in connection with purchase or sale of securities.
After the defendant filed a motion for reconsideration, the district court withdrew its earlier order remanding the case and affirmed the judgment of the bankruptcy court on February 4, 2002. In so doing, the district court determined that the recent amendments to Kentucky’s blue sky laws could not be given retroactive effect in this case because they impaired the vested right that defendant had in the expiration of the earlier statute of limitations. The district court went on to find that the proper statute of limitations to apply in this case is that found under the Kentucky blue sky statute and not the statute of limitations for common law fraud, and therefore that the statute of limitations had run on plaintiff’s claim.
ANALYSIS
A Standard of Review
In an appeal from a bankruptcy court that has been reviewed by a district court, both lower courts’ conclusions of law are reviewed de novo. See Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 106 F.3d 1255, 1259 (6th Cir.1997). The judgment of a lower court can be affirmed if correct for any reason, including one not considered by the lower court. See Russ’ Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985).

*720
B. Plaintiffs Claim is Governed by Kentucky’s Blue Sky Statute, Not by Kentucky’s Common Law Fraud

The bankruptcy and district courts correctly held that plaintiff’s claim is governed by Kentucky’s blue sky statute. Plaintiff argues that his claim against Black Gold is for common law fraud and the statute of limitations found in Kentucky’s blue sky statute does not bar this action. His contention seems to be that since in his amended complaint he asserted that Black Gold aided and abetted Robey and Lundy in a breach of their fiduciary duties, this action should be governed by Kentucky’s common law of fraud, even though these breaches of fiduciary duty were fraudulent omissions in the sale of securities. This distinction is important because common law fraud in Kentucky has a five year statute of limitations from the discovery of the fraud, while Kentucky’s blue sky statute, which regulates fraud in the sale of securities, has a three year statute of limitations.[1] See K.R.S. §§ 292.480(3),[2] 413.120(11), 413.130(3). If this action is governed by the five year statute of limitations, then this action was filed in a timely manner, assuming the cause accrued, as plaintiff contends, in 1991.[3]
Common law fraud in Kentucky has six elements that the plaintiff must prove: “a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.” United Parcel Service Co. v. Rickert, 996 S.W.2d 464, 468 (Ky.1999). The pertinent section of Kentucky’s blue sky law, on the other hand, reads as follows: “It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly ... [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.” K.R.S. § 292.320(l)(c). Plaintiff does not argue that K.R.S. § 292.320(l)(c) does not, on its face, apply to this case; he instead argues that it does not limit a plaintiffs ability to sue under common law fraud for abetting a breach of fiduciary duty.
Wright’s argument is disposed of by controlling Kentucky case law. In First State Bank v. Slusher, 267 Ky. 190, 101 S.W.2d 661 (Ky.1937), the plaintiff argued- *721 much like the plaintiff in the present case-that despite the facts showing fraud in the sale of securities, the five year statute of limitations for common law fraud should apply rather than the shorter statute of limitations found in Kentucky’s blue sky statute. See id. at 662. Additionally, the plaintiff in Slusher, like the plaintiff here, filed an amended complaint in which she removed all reference to Kentucky’s blue sky law, and then later urged the court that she was not seeking to recover under the blue sky law, but rather under common law fraud. See id. at 661-62. The Kentucky high court nevertheless held that the statute of limitations found in Kentucky’s blue sky statute applied. See id. at 662-68. The Kentucky Supreme Court reaffirmed Slusher in 1975, holding that “[t]he revisions in the Kentucky Blue Sky Law in 1960 and in 1972 contain no language evidencing a legislative design to change the Slusher result.” Owensboro v. First U.S. Corp., 534 S.W.2d 789, 791 (Ky. 1975).[4] In the present case, plaintiff’s argument that the five year statute of limitations for common law fraud should apply must likewise fail. Kentucky’s blue sky law, and the three year statute of limitations found therein, is applicable to the facts of the case at hand.
In support of his contention that this case is governed by common law fraud in Kentucky, plaintiff points to two cases that do not contradict this conclusion. The first is First Kentucky Trust Co. v. Christian, 849 S.W.2d 534 (Ky.1993), in which the beneficiary of a trust brought an action for breach of fiduciary duty against the trustee. See id. at 536. The trustee, among other things, argued that the 15-year statute of limitations for breach of a written contract-the contract that created the trust-applied to bar the action. The Kentucky Court of Appeals disagreed, stating that “the duties of the trustee are not based on contract, but rather on the effect of the trust conveyance.” Id. at 538. The Court of Appeals went on to hold that the statute of limitations applicable to trust law was the one that governed the case, rather than the more general statutes of limitations applicable to written contracts or to actions relating to withholding of real or personal property (the statute of limitations that the trial court said barred the action). See id. at 537-38.
The plaintiff argues that this Court should therefore look at the “effect” of the conveyance in this case (apparently of the stocks)-that is, the perpetration of fraud on Wright Enterprises-and not at the method used to carry out the fraud-that is, the transfer of stocks. In other words, the plaintiff is asking the Court to ignore the subject matter of the fraud, and instead to focus simply on the fact that Black Gold allegedly helped Robey and Lundy commit fraud against Wright Enterprises.
The conclusion that plaintiff urges the Court to reach does not follow from the holding in First Kentucky Trust. The court in First Kentucky Trust applied the statute of limitations from Kentucky’s trust law because the court did evaluate the subject matter of the fraud and, concluding that the fraud took place in relation to property conveyed in a trust, held that trust law should apply to the case. The court did not ignore the subject matter or context of the fraud-the court looked at it closely and concluded that it determined the correct law to be applied.
*722 The plaintiff also argues that First Kentucky Trust, along with the decision by the Kentucky Court of Appeals in Albert v. Black Motor Co., 357 S.W.2d 714 (Ky. 1962), show that the rights of individuals harmed by a breach of fiduciary duty should not be abrogated by the application of a more specific statute that also governs the facts of the case.[5] In Albert, the plaintiff brought a claim alleging breach of fiduciary duty, fraud, and concealment by the defendant, who, as an officer of both a parent corporation and its subsidiary, manipulated a sale of stock between the two corporations in order to profit personally from the transactions. See 357 S.W.2d at 715-16. During the course of these manipulations, the defendant failed to disclose the true value of the stock to the other directors and stockholders of the parent corporation. See id. at 716. The Kentucky high court analyzed the case as a breach of fiduciary duty and as a matter of corporate law rather than as fraud in connection with the sale of securities. Notably, however, the court never discussed whether the case could be decided under securities law, and certainly did not hold that securities law was inapplicable. Nor was the correct statute of limitations ever discussed, as there was apparently no contention by the defendant that the action was barred by passage of time. The fact that the Kentucky high court did not apply the Kentucky blue sky statute to a case where it might have been applicable does not require the conclusion that the blue sky statute should not be applied in this case, especially since its applicability does not appear to have been argued by either party in Albert.
Finally, plaintiff argues that the 1998 amendments to Kentucky’s blue sky statute show that the Kentucky legislature did not intend to limit the rights and remedies under common law fraud by the creation of the blue sky statute. In 1998, the Kentucky legislature added Section (7) to K.R.S. § 292.480, which states: “The rights and remedies provided by this section are in addition to any other rights or remedies that may exist at law or in equity.” Plaintiff argues that Section (7) was a clarification of the already existing law, rather than an addition to or change in the law. Plaintiff does not, however, cite any authority for the proposition that this was merely a clarification and not a fundamental change in the law. One could just as easily argue that the Kentucky legislature added Section (7) because, prior to 1998, K.R.S. § 292.480 had provided the exclusive rights and remedies for actions that fell within its scope. There is no reason to think that Section (7) was merely a clarification of the already existing law.
This conclusion is confirmed by the Kentucky Court of Appeals’s decision in Owensboro, 534 S.W.2d 789, where the high court explicitly held-in the statute of limitations context-that the blue sky statute contained the sole remedy for fraud in connection with the sale of securities. Id. at 791 (“If the legislature would choose to make the blue sky remedy for sale by misrepresentation cumulative, it is free to do so, but in our view it has not done so yet.”). Sixth Circuit cases have confirmed this interpretation of the holding in Owensboro. See Carothers v. Rice, 633 F.2d 7, 11, 14 (6th Cir.1980) (“The [Owensboro ] court held that the blue sky law was meant to be the exclusive remedy.... The Kentucky Supreme Court has held that its blue sky law is the exclusive remedy for fraud in the sale of securities.”); see also *723 Herm v. Stafford, 663 F.2d 669, 677-78 (6th Cir.1981). These cases make clear that Section (7) was not merely a clarification of the existing state of the law, since the Kentucky Court of Appeals had previously held that the remedies in Kentucky’s blue sky were not in addition to other remedies, but were instead the exclusive remedy for fraud in the sale of securities.
The plaintiffs argument that amendments found in Section (7) of K.R.S. § 292.480 apply retroactively to the present case is also unpersuasive. In Kentucky, statutes will not be retroactively applied unless the legislature clearly expressed its intention to give retroactive effect to the statute. See Dean v. Gregory, 318 S.W.2d 549, 552 (Ky.1958); see also Shaw v. Seward, 689 S.W.2d 37, 42 (Ky.App.1985) (“Retroactive application of legislation absent clear legislative intent favoring that application is impermissible.”). There is no evidence that the Kentucky legislature intended to make K.R.S. § 292.480(7) applicable retroactively, and the plaintiffs suggestion that the legislature did intend retroactive application is groundless.
The holdings in Owensboro, Carothers, and Herm make clear that-at least prior to 1998-when fraud was alleged in connection with the sale of securities, Kentucky’s blue sky laws provided the exclusive remedy. See Owensboro, 534 S.W.2d at 791; Carothers, 633 F.2d at 11, 14; Herm, 663 F.2d at 677-78. The amended complaint, although it styles the case as one for fraud and breach of fiduciary duties, clearly alleges facts that amount to fraud in the sale of securities, and the plaintiffs attempts to characterize the case otherwise are unpersuasive. It is thus evident that, under Slusher and Owensboro, the three-year statute of limitations applied in this case.

C. The June 21, 2001 Amendments to Kentucky’s Blue Sky Statute Do Not Extend the Applicable Statute of Limitations Such That Plaintiffs Action is Not Barred

The amendments which the Kentucky legislature made to the blue sky statute on June 21, 2001, do not alter the conclusion that plaintiffs claims are barred by the statute of limitations found in the blue sky statute. The plaintiff argues that, even if the three year statute of limitations found in Kentucky’s blue sky statute is applicable to the present action, the June 21, 2001, amendments to the blue sky law extend the statute of limitations so that this action was not untimely filed. In the June 21, 2001, amendments, the legislature changed the timing of when an action under the blue sky statute accrues from the date of the contract of sale to a discovery rule. Cf Cali-Ken Petroleum Co. v. Miller, 815 F.Supp. 216, 219 (W.D.Ky.1993) (holding that the time of accrual under the then-existing version of Kentucky’s blue sky statute was the date of sale, because the legislature had intentionally omitted a discovery rule). The new discovery rule provides that “[n]o person may sue under this section more than three (3) years after the date the occurrence of the act, omission, or transaction constituting a violation of this chapter was discovered, or in the exercise of reasonable care should have been discovered.” K.R.S. § 292.480(5). Moreover, the legislature explicitly made the discovery rule applicable retroactively for ten years prior to the effective date of the Act, which was June 21, 2001. See 2001 Ky. Acts 129 § 2. Specifically, the Kentucky legislature stated that
the amendments [to KRS § 292.480] contained in Section 1 of this Act shall be retroactively applied to any actions, other than those actions given res judicata effect by a court of competent juris *724 diction, which in the exercise of reasonable care would have been discovered as having accrued in the ten (10) years immediately preceding the effective date of this Act [June 21, 2001].
Id. The plaintiff argues that since the legislature made the discovery rule retroactively applicable for ten years, thus beginning on June 21, 1991, this action is not barred because the plaintiff did not discover the fraud until the summer of 1991.
The district court held that, even though the Kentucky legislature made the discovery rule retroactively applicable, the 2001 amendment could not be given retroactive effect in this case because it would interfere with the defendant’s vested right in the running of the statute of limitations. The district court based its holding on several Kentucky Court of Appeals cases. In Dean, 318 S.W.2d 549, the court held that “statutes will not be given a retroactive effect if ... they impair vested rights.” Id. at 552. In Stone v. Thompson, 460 S.W.2d 809 (Ky.1970), the court held that “[t]here is no vested right in the running of the statute of limitations unless it has completely run and barred the action.” Id. at 810. Finally, in Lawrence v. City of Louisville, 96 Ky. 595, 29 S.W. 450 (Ky.1895), the Court of Appeals held that
[t]he current of decisions in other States treats as a vested right the privilege to plead the statute of limitations when it has run and become a bar to a demand arising either ex contractu or ex delicto. We believe the right of defense is just as important as the right to bring an action.
When the right to recover property has been extinguished because of the statute of limitations, we say that the one who thus holds has a vested right. He acquired it not by a moral but a legal remedy. He is then beyond the power of the legislature to divest him of his rights therein, except by his consent or due process of law....
The legislature has no more right in the one than in the other case by retrospective legislation to destroy the right to property, each being held by virtue of the statute of limitations. The right to a defense should be held as inviolate as the right of action. When the remedy is destroyed, the right to maintain the action is extinguished.
Id. at 452. Based on these eases, the district court found that once the statute of limitations ran in the spring of 1992 under the old rule of accrual, the defendant had a vested right which the legislature could not deprive it of in the 2001 amendments.
We do not need to consider the merits of this argument. Even if the discovery rule can be applied to the present action, the statute of limitations on this action has still elapsed. When the Kentucky legislature made the discovery rule found in K.R.S. § 292.480(5) retroactive, it expressed no intention that the amendments would toll the statute of limitations. It merely made the discovery rule itself retroactive, and in the present case the plaintiff has admitted-even argued-that the fraud was discovered sometime in the summer of 1991. Therefore, even if the discovery rule does apply, the statute of limitations ran three years from the date of discovery, or sometime in the summer of 1994. The involuntary petition for bankruptcy in this case was not filed until June 6, 1995, almost a full year after the statute of limitations elapsed under the 2001 amendments. Accordingly, plaintiff’s argument that the 2001 amendments to the Kentucky blue sky law change the application of the statute of limitations in this ease is unpersuasive.
Any other interpretation of the retroactivity clause for K.R.S. § 292.480(5) would lead to odd results or to reading much *725 more into the text than the legislature included. A court must give a statute its plain and ordinary meaning and not go beyond the words of the statute where those words are sufficient to explain its meaning. See United States v. Choice, 201 F.3d 837, 840 (6th Cir.2000) (“The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.”). The best reading of the retroactivity clause is that the legislature only intended to make the amendments to KR.S. § 292.480 retroactive, and the only amendment made was the change of accrual date to a discovery rule. See 2001 Ky. Acts 129 § 2. The legislature did not include a provision for the tolling of the statute of limitations. This reading makes sense because it allows anyone who had a fraud committed upon them in the sale of securities from June 21, 1991, onwards, but did not discover the fraud until after June 21, 2001, or within three years prior to that date, to initiate an action for damages. Without making the discovery rule retroactive, plaintiffs would only be able to take advantage of the discovery rule for frauds committed after June 21, 2001, because any frauds committed prior to that date would still use the old method of accrual (the date of the contract of sale). True, this reading of the retroactivity clause would not provide a remedy for those who were harmed by fraud in the sale of securities from June 21, 1991, onwards, who also discovered this fraud during the 1990s but did not initiate an action within three years of discovery (possibly because the statute of limitations under the old method of accrual had already run), such as the plaintiff in this case. But the legislature, by not attempting to toll the statute of limitations retroactively, avoided any possible problem with interfering with defendants’ vested rights in the expiration of the statute of limitations.
If the legislature had wished to toll the statute of limitations, it could have easily done so, simply by adding language to the effect that any fraud discovered during the retroactivity period must be brought within some period of time (perhaps three years) of the effective date of the amendments. The question of whether this would have raised problems with defendants’ vested rights aside, the point is that the legislature did not include this language. For the court now to read in such language goes beyond the plain and ordinary meaning of the statute. See Choice, 201 F.3d at 840. For the court to determine that the legislature intended for the statute to be tolled, but not to read in some later date by which an action must be brought, would perhaps involve less “legislation” on the part of the court, but would create a regime in which plaintiffs who discovered a fraud during the 1990s but failed to bring suit would have an indefinite period in which to initiate an action. It is hard to believe that the legislature intended such a result.
Given the alternatives, the most reasonable interpretation of the Kentucky legislature’s action is that it intended for the discovery rule to be applicable retroactively, but not to toll the statute of limitations. This also fits best with the plain meaning of the statute, and we therefore interpret the statute that way. The plaintiff’s action was therefore untimely.
CONCLUSION
For the foregoing reasons, we AFFIRM the judgment of the district court.

. The mechanics of accrual under this statute will be discussed in Section C of this opinion.

. This statute has since been amended as will be discussed later in this opinion. Section (3) of K.R.S. § 292.480 contained the statute of limitations potentially applicable in this action at all times relevant to this case, and our reference to K.R.S. § 292.480(3) is to the preamendment version and numbering of that subsection.

. It would have been filed timely because of the unique rules of bankruptcy. 11 U.S.C. § 108(a) provides that
[i]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) two years after the order for relief.
The Trustee-plaintiff filed his original complaint in this case on April 30, 1998. This was within two years of when an Order for Relief was entered in the underlying bankruptcy proceedings on May 1, 1996. The involuntary petition in the bankruptcy proceeding was filed on June 6, 1995, and this was within five years of when the plaintiff alleges that the bankrupt discovered the fraud in the summer of 1991. The statute of limitations for common law fraud is five years from the date of discovery, and no later than ten years from the making of the contract or the perpetration of the fraud. See K.R.S. §§ 413.120(11), 413.130(3).

. While it is true that this case involves a defrauded seller instead of a defrauded purchaser, unlike Slusher and Owensboro, we have previously held that under Kentucky’s Blue Sky Law, a defrauded seller has an implied remedy under § 292.320(1), and this remedy is governed by the three-year statute of limitations in § 292.480(3). See Carothers v. Rice, 633 F.2d 7, 9-12 (6th Cir.1980).

. If anything. First Kentucky Trust is to the contrary, as it held the more specific law regarding a statute of limitations for trusts to apply rather than the statute for written contracts or the statute for damages for withholding of real property.